# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIAN V. WERNICK, | ) |
|       Appellant, | ) Case No. 16-cv-5313 |
| v. | ) Judge Sharon Johnson Coleman |
| UNITED STATES, | ) |
|       Appellee. | ) |

## MEMORANDUM OPINION AND ORDER

Appellant, Marian V. Wernick, appeals the United States Bankruptcy Court for the Northern District of Illinois' denial of her motion to find the Social Security Administration in violation of the automatic stay. For the reasons stated below, the Bankruptcy Court's ruling is affirmed in part and reversed in part.

**Background**

In 2004, Marian Wernick was convicted of defrauding the Social Security Administration by using a false identity to collect benefits that she was not entitled to receive. Wernick pled guilty to that offense and was sentenced to two years of probation. Wernick was also ordered to immediately pay $37,268 in restitution. Because Wernick had no assets or income other than government benefits, the probation department independently agreed that Wernick should make monthly $10 restitution payments as a component of her probation.

Separately, the federal statutes and regulations governing recovery of overpayments by the Social Security Administration provided that the Social Security Administration could not pay Wernick any benefits until an amount equal to the overpayment had been recovered. The Social Security Administration admits that it failed to enforce these regulations until the spring of 2014,

when it began withholding the entirety of Wernick's social security benefit checks. Wernick, deprived of her sole source of income, subsequently filed for bankruptcy.

The United States preemptively moved the bankruptcy court to order that the automatic stay did not apply to the benefit withholding or, if it did, to grant the United States relief from the stay. The bankruptcy court ruled that the United States' motion was moot because the collection of restitution and setoff was not in violation of the automatic stay.

Wernick then moved the district court that had heard her criminal case to clarify the restitution order or, in the alternative, institute a restitution payment schedule. The district court subsequently entered an order "request[ing] the Social Security Administration to reconsider the use of its authority to take 100% of the defendant's social security benefits and instead request[ing] the Social Security Administration to reduce it to a more reasonable ten percent of the defendant's net monthly benefits." Despite that order, the Social Security Administration continued to withhold Wernick's benefits because under federal law it lacked the discretion to withhold any less than all of Wernick's benefits. Wernick moved the bankruptcy court to hold that the Social Security Administration was in violation of the automatic stay because, by the Social Security Administration's own admission, its collection of Wernick's benefits was occurring pursuant to federal regulations and not the criminal restitution order. The bankruptcy court denied that motion.

Wernick subsequently returned to the district court, where she moved to institute a payment schedule. The district court granted that motion, and modified the restitution schedule to require Wernick to pay as restitution 10% of her net monthly income. Wernick then returned to the bankruptcy court, where she filed a renewed motion to find the SSA in violation of the automatic stay. The bankruptcy court denied that motion, finding the enforcement of the restitution order to not be subject to the automatic stay "for those reasons set forth in the United States' response and surreply." Wernick now appeals that denial.

**Discussion**

This Court reviews the bankruptcy court's findings of fact for clear error. *In re Midway Airlines, Inc.,* 383 F.3d 663, 668 (7th Cir. 2004). Its conclusions of law, however, are reviewed de novo. *Id.*

Wernick contends that the bankruptcy court's ruling was erroneous because (1) the Social Security Administration's withholding of her benefits under federal statute and regulations did not constitute collection of restitution exempt from the automatic stay under the Mandatory Victims Restitution Act, (2) section 553 of the Bankruptcy Code forbids the SSA's offset of Wernick's monthly benefits, and (3) even if offset were permitted under Section 553, the bankruptcy court retained discretion to control the amount of offset in accordance with equity and fairness.

This Court first turns to Wernick's argument that section 553 of the Bankruptcy Code forbids the Social Security Administration's withholding of Wernick's monthly benefits. Federal statute provides that social security overpayments are to be recovered by decreasing any payments which the overpaid person is entitled to, in accordance with regulations prescribed by the Commissioner of Social Security. 42 U.S.C. § 404(a)(1)(A). Duly enacted regulations provide that:

> [i]f an individual to whom an overpayment was made is at the time of a determination of such overpayment entitled to a monthly benefit or a lump sum under title II of the act, or at any time thereafter becomes so entitled, no benefit for any month and no lump sum is payable to such individual . . . until an amount equal to the amount of the overpayment has been withheld or refunded.

20 C.F.R. § 404.502(a)(1). It is undisputed that the Social Security Administration was withholding Wernick's benefits pursuant to these statutes and regulations.

In pertinent part, section 553 of the Bankruptcy Code provides that pre-petition claims against a debtor may not be offset against post-petition debts owed to the debtor. 11 U.S.C. § 553. Wernick contends that her social security benefits were post-petition debts owed to her, and that their withholding to repay her pre-petition overpayment therefore violated section 553. The

3

government, in response, contends that the withholding constituted a recoupment rather than a setoff and was therefore exempt from section 553.

Recoupment is an equitable principle of general application. Unlike a setoff, which is a form of cross-action occurring when there are two separate, mutual obligations, a recoupment requires that both the debtor's claim against the creditor and the creditor's claim against the debtor arise from a single transaction. *In re Klingberg Schools*, 68 B.R. 173, 178 (N.D. Ill. 1986), *affd. per curiam* 837 F.2d 763 (7th Cir. 1988) (mem.). While set-off is based on conflicting allegations of indebtedness, recoupment modifies the debtor's right to collect from the creditor without the assertion of a separate and conflicting claim. *Id.* In the bankruptcy context, recoupment has been applied to allow creditors to recoup amounts owed by the debtor for pre-petition debts from payments to the debtor for post-petition earnings. *Id.* Recoupments, unlike set-offs, do not violate the automatic stay because when a debtor's claim to funds is met with a valid recoupment defense, the debtor has no continuing interest in the funds. *In re Chapman,* 265 B.R. 796, 807 (Bankr. N.D. Ill. 2011), *aff'd sub nom. Chapman v. Charles Schwab & Co.*, No. 01 C 9697, 00 A 0358, 00 B 5538, 2002 WL 818300 (N.D. Ill. Apr. 30, 2002).

The concept of recoupment has been consistently applied to the Medicare statute's provisions for paying medical service providers. That statute provides in pertinent part that "[t]he Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate . . . the amounts so determined, *with necessary adjustments on account of previously made overpayments or underpayments . . . .*" 42 U.S.C. § 1395g(a) (emphasis added). The D.C. Circuit, in interpreting this statute in the bankruptcy context, held that the adjustments for prior overpayments constituted an integral part of calculating payments due and owing to providers under the statute. *United States v. Consumer Health Servs. of Am, Inc.*, 108 F.3d 390,

4

395 (D.C. Cir. 1997). The court therefore concluded that post-petition payments made under that statute could withhold the amount of prior overpayments, because "[t]o conclude otherwise, we think, would allow the Bankruptcy Code to modify an explicit statutory scheme defining liability for particular services." *Id.* The court reached the same conclusion when it applied the doctrine of equitable recoupment, noting:

> In determining whether the pre-petition and post-petition services should be thought of as one transaction, the key to us is the Medicare statute. Since it requires the Secretary to take into account pre-petition overpayments in order to calculate a post-petition claim—as we have described above—Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction for purposes of any claim the government would have against the provider.

*Id; see also In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 3 (1st Cir. 2004) (concluding that the Health Care Financing Administration's deduction of pre-petition overpayments was a transaction in the nature of a recoupment rather than a setoff); *In re TLC Hosps., Inc.*, 224 F.3d 1008, 1013 (9th Cir. 2000) (agreeing that in light of the statutory and regulatory provisions of the Medicare program the statutorily provided-for reimbursement system constitutes a recoupment). The Third Circuit, however, disagreed with this rationale, reasoning that because each HCFA payment provides compensation for services performed in a set time span, each payment concerned different services rendered and thus constituted a separate transaction. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1081–82 (3d. Cir. 1992).

The Third Circuit is the only circuit to have considered the applicability of equitable recoupment to the Social Security statute.[1] In *Lee v. Schweiker*, 739 F.2d 870 (3rd Cir. 1984), the Third Circuit rejected the Social Security Administration's argument that its withholding of a prior

---

[1] The Seventh Circuit addressed the discharge of debts arising from social security payments in *In re Neavear*, 674 F.2d 1201 (7th Cir. 1982). That case, however, held only that overpayment debts are not exempt from discharge based on the language of section 207 of the Social Security Act. It did not address the ultimate question of whether or not social security overpayment debts were dischargeable or, for that matter, whether such debts could be treated as recoupments exempt from the automatic stay.

5

overpayment from the appellant's benefits was a recoupment exempt from the automatic stay. Distinguishing from cases involving payments to health-care providers, the court noted that a social-welfare statute entitling an individual to benefits is not a contract, and that the obligation to repay a previous overpayment is therefore a separate debt from the government's obligation to provide benefits. *Id.* at 875. The *Lee* court concluded by observing that the primary purpose of the social security statute was to provide income security to the recipients and therefore Social Security benefits should be protected by the automatic stay.

Lee is distinguishable from the present case, however, because the appellant in *Lee* was not accused of fraud. Although the *Lee* Court held that the purpose of the social security statute is to provide income security to social security recipients, this Court does not read the statute quite so broadly. To the contrary, the statute expressly provides for the withholding of benefits to recoup prior overpayments. The statute further distinguishes between overpayments resulting with fault and those resulting without fault, and provides the Social Security Administration with discretion to suspend the recovery of overpayments that did not result from fault where their collection would "defeat the purpose of the statute or be against equity and good conscience." 42 U.S.C. § 404(b)(1). The statute contains no similar exception for overpayments resulting from fault. Because the appellant in *Lee* does not appear to have been at fault, the recovery of her overpayments was, as is demonstrated by the exception to the recovery of overpayments resulting without fault, secondary to the statutory purpose of providing income security. Wernick, however, received her overpayment as a result of fraud. The plain text of the social security statute thus demonstrates that it was not Congress' intent that Wernick be provided with income security notwithstanding the overpayment

6

that she received.  The *Lee* Court offers no compelling reason why a debtor's bankruptcy should alter that result.[2]

Nor does this Court agree with the *Lee* Court that the obligation to repay a prior overpayment is separate from the right to receive benefits.  To the contrary, the adjustment of social security benefits to recover prior overpayments constitutes an integral part of the statutory process for calculating the social security benefits owed to an individual.  *Cf. Consumer Health Servs. of Am., Inc.*, 108 F.3d at 395 ("Since [the Medicare statute] requires the Secretary to take into account pre-petition overpayments in order to calculate a post-petition claim . . . Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction for purposes of any claim the government would have against the provider.").  Congress' intent that this be the case is clearly evinced by the fact that section 404 accompanies sections 402 and 403, which concern the calculation of benefits for different individuals, and precedes section 405, which concerns the procedures that are to be used to establish the rights of beneficiaries.   This Court thus interprets the payment of benefits and the withholding of prior overpayments to be elements of one unified transaction subject to recoupment.  Accordingly, the Social Security Administration's withholding of Wernick's benefits to repay prior overpayments constituted recoupments that did not violate the automatic stay.[3]  *Cf. Banuelos v. Apfel*, 165 F.3d 1166, 1170 (7th Cir. 1999) (terming the withholding of overpayments of disability insurance benefits pursuant to section 404(b) to be a "recoupment" in an administrative appeal), overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999).

---

[2] To the contrary, this Court notes that the Bankruptcy Code expressly exempts debts arising from actual fraud from discharge.  11 U.S.C. § 523(a)(2); 11 U.S.C. § 1324(a)(2).
[3] Because this Court holds that the Social Security Administration is engaging in recoupment and not set-off, this Court does not consider Wernick's argument that the bankruptcy court has the discretion to limit the exercise of the section 553 right of setoff.

7

Wernick separately contends that the bankruptcy court erred in concluding that the Social Security Administration's withholding of her benefits constituted restitution payments exempt from the automatic stay. The Mandatory Victims Restitution Act (MVRA) provides, as is pertinent here, that the United States may enforce a judgment imposing restitution "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a). A judgment imposing restitution may be enforced "notwithstanding any other Federal law (including section 207 of the Social Security Act)." *Id.* Thus, the automatic stay does not impair the government's ability to collect restitution from an individual's social security payments when such collection complies with the MVRA.

Wernick, however, contends that the MVRA must be read as applying only to *judicial* enforcement of a judgment of restitution and not to administrative setoffs or other collection mechanisms available to the United States absent a court order.

Wernick argues that the principle of *noscitur a sociis* requires this Court to read the MVRA's use of "enforcement" as describing only judicial enforcement. A principle of statutory interpretation, *noscitur a sociis* stands for the proposition that a word must not be ascribed a meaning so broad as to render it inconsistent with the words that accompany it. *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). Wernick asserts that the phrase "in accordance with the practices and procedures for the enforcement of a civil judgment" indicates Congress' intent that the exemption from the automatic stay only applies to judicial enforcement actions. Wernick, however, fails to offer any explanation to justify this assertion, and identifies no words within the statute that would conflict with interpreting "enforcement" as encompassing administrative enforcement remedies. From the plain language of the statute, the only restriction that is placed on the method of enforcement used is that it must be capable of "enforcing" a civil

8

judgment. There is nothing in the statute to suggest that it encompasses only judicial remedies. Accordingly, this Court rejects Wernick's interpretation of that language.

Wernick also asserts that the Bankruptcy Code precludes reading the MVRA as encompassing administrative setoff as a means of civil enforcement. Wernick bases this argument on the Bankruptcy Code's express exception permitting the IRS to set off income tax refunds based on unpaid tax liabilities notwithstanding the automatic stay. 11 U.S.C. § 362(b)(26). This, Wernick asserts, shows that Congress "knew how to create" an exception to the automatic stay for administrative setoff. Wernick contends that reading "enforcement" in 3613(a) to include administrative setoff would render this provision of the Bankruptcy Code redundant.

Section 3613 is a criminal restitution statute that contains a blanket exception from the Bankruptcy Code. The IRS setoff exception in section 362, by contrast, is a narrow exception to the automatic stay specifically concerning the set-off of tax liabilities. It does not expressly concern any criminal conduct. Thus, it is not rendered redundant by reading "enforcement" in section 3613 as including administrative setoff because setoff to collect restitution and setoff to collect back taxes are not comparable. Nor can section 362 be used, as Wernick attempts to use it, to assist in interpreting language in an entirely dissimilar statute. This Court accordingly rejects Wernick's argument that the MVRA only encompasses the judicial enforcement of restitution orders.

Wernick further argues, however, that the Social Security Administration's administrative recoupment of the past overpayment is not a means to enforce a civil judgment within the scope of the MVRA. As this Court previously noted, by its plain language the MVRA applies only to methods that can be used to enforce a civil judgment. It is undisputed that the Social Security Administration's statutorily-authorized recoupment of prior overpayments cannot be used to enforce a civil judgment. Thus, the Social Security Administration's actions cannot, in and of

9

themselves, constitute the collection of restitution under the MVRA.[4] *Cf. United States v. Nelson*, No. 03-80712, 2013 WL 3381436, at *2 (E.D. Mich. July 8, 2013) (recognizing that SSI benefit withholding cannot be altered by a restitution order from a criminal case); *United States v. Brown*, Criminal No. 09-116, 2012 WL 75105, at *3–4 (W.D. Pa. Jan. 10, 2012) (recognizing that a criminal court lacks jurisdiction to impede the Social Security Administration's collection of overpaid sums pursuant to federal regulations and policies).

The government contends that administrative set-off may be used to collect restitution, and that social security benefits may be subject to such set-off. Specifically, the government points to the Treasury Offset Program and its underlying statutes, which provide that social security benefits may be subject to administrative offset against debts owed to another agency of the federal government, including restitution debts. 31 U.S.C. § 3716; s*ee Greene v. United States*, 124 Fed. Cl. 636, 644 (2015) (recognizing that the Treasury Offset Program may be used to collect restitution debts). This Court agrees with the government that the Treasury Offset Program would appear to permit it to withhold Wernick's social security benefits and to apply them towards her restitution obligations. The government, however, does not assert that the Social Security Administration's withholding of Wernick's benefits occurred pursuant to the Treasury Offset Program or section 3716 in this instance, and the facts on appeal belie any inference to that effect.[5] Thus, because the government has identified no applicable basis for the withholding of Wernick's benefits separate and apart from the Social Security statute and its implementing regulations, this Court must conclude, on

---

[4] Although this Court concludes that the Social Security Administration's administrative recovery of overpayments is separate and distinct from the collection of restitution, it also notes that, as shown by this case, the administrative recoupment of overpayments unquestionably impacts the criminal justice process. Too often, in this Court's experience, the defendant and the court are not placed on notice of the potential for administrative recoupment prior to the execution of a plea agreement, despite the fact that the recoupment operates as a de facto collateral consequence of a guilty plea in cases of benefit overpayments. This litigation could have been easily avoided had Wernick been informed that the Social Security Administration would withhold her benefits to recoup past overpayments prior to entering her guilty plea.

[5] Although Section 3716 provides that social security benefits are subject to offset notwithstanding any other provision of law, it also provides that the first $9,000 in benefits that a debtor receives annually are exempt from offset. 31 U.S.C. § 3716(c)(3)(A)(ii). Here, it is undisputed that all of Wernick's social security benefits were being withheld.

the record before it, that the government's withholding of Wernick's benefits did not constitute the collection of restitution.⁶ This Court therefore reverses the Bankruptcy Court's determination that the withholding of Wernick's benefits was exempt from the automatic stay pursuant to the MVRA, but affirms the Bankruptcy Court's determination that the Social Security Administration's recoupment of Wernick's prior overpayment was exempt from the automatic stay.

**Conclusion**

For the foregoing reasons, the Bankruptcy Court's order is affirmed in part and reversed in part.


IT IS SO ORDERED.

Date:   December 13, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

---

⁶ This Court accordingly need not consider Wernick's argument that the district court's modification of the restitution order somehow barred the government from collecting restitution in excess of the payment schedule that the Court entered.